IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RODERICK ALLEN BATISTE,<br>TDCJ #1265531, | §<br>§<br>§ | |
| Petitioner, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. G-07-0544 |
| NATHANIEL QUARTERMAN, Director,<br>Texas Department of Criminal Justice -<br>Correctional Institutions Division, | §<br>§<br>§<br>§ | |
| Respondent. | §<br>§ | |

## MEMORANDUM AND ORDER

State inmate Roderick Allen Batiste (TDCJ #1265531) seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge a state court conviction. The respondent has filed an answer, arguing that Batiste is not entitled to relief. (Doc. # 11). Batiste has filed more than one response and he has also filed a motion for discovery. (Docs. # 14, # 16, # 17, # 18, # 19). After considering all of the pleadings, the state court records, and the applicable law, the Court denies relief and dismisses this case for reasons set forth below.

## I.    BACKGROUND

A Galveston County grand jury returned an indictment against Batiste in cause number 03-CR-3199, accusing him of aggravated assault with a deadly weapon, namely, a firearm. The State enhanced the indictment for purposes of punishment with allegations that Batiste had at least one prior felony conviction. The record shows that the trial court heard a variety of pre-trial motions on the morning of August 9, 2004, with jury selection taking

place that afternoon.  Batiste pleaded guilty to the charges against him on the morning of August 10, 2004, after the jury had been empaneled, but before the trial commenced.  In a hearing outside the jury's presence, the 405th District Court of Galveston County, Texas, found Batiste guilty as charged after determining that his plea was voluntarily and knowingly made.

Having conceded his guilt, Batiste elected to have the empaneled jury determine his sentence.  During the punishment phase of the trial, the victim (Jana Reed) testified that Batiste shot her once in the stomach as she sat in his vehicle on September 14, 2003, causing her to lose her unborn child.  Batiste also shot her again in the head and face, causing extensive injuries, before he fled the scene.  The State presented evidence of an unadjudicated offense that Batiste committed approximately one month later when he shot at another woman.  An eyewitness (Alice Roy Bellard) testified that she saw Batiste shoot at her friend (a woman identified as "Victoria," also known as "Little Bit") as the two women sat at a bus stop in Houston on October 13, 2003.  Batiste's ex-wife (Sandra Waller) testified that Batiste was using crack cocaine during this time and that a firearm was later recovered from his vehicle.  In addition, the State presented evidence that Batiste had a prior felony conviction from California for possession of a controlled substance, making him eligible for an enhanced sentence of up to ninety-nine years or life in prison as a repeat offender.[1]  At the

---

[1]     In Batiste's case, the charged offense (aggravated assault with a deadly weapon) was a second-degree felony under Texas law.  *See* TEX. PENAL CODE § 22.02.  Because Batiste had a prior felony conviction, his second-degree felony was punishable as a first-degree felony offense under the Texas sentencing enhancement statute.  *See* TEX. PENAL CODE § 12.42(b).

(continued...)

conclusion of the punishment proceeding, the jury sentenced Batiste to serve eighty years in prison.

On direct appeal Batiste complained that the trial court erred by (1) denying him access to jury records kept by the district attorney's office and used by the State during the jury selection process; (2) denying his pretrial motion for a psychiatric examination; and (3) failing to exclude Alice Roy Bellard's testimony about the extraneous offense.   The intermediate court of appeals rejected these arguments and affirmed the conviction.   *See Batiste v. State*, No. 14-04-00867-CR (Tex. App. — Houston [14th Dist.] Nov. 15, 2005) (unpublished).   Thereafter, the Texas Court of Criminal Appeals refused Batiste's petition for discretionary review.

Batiste challenged his conviction further by filing a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure.   In that application, Batiste complained that he was denied effective assistance of counsel during his trial, that the prosecutor engaged in misconduct by introducing evidence of an extraneous offense, and that the trial court deprived him of a fair trial by making erroneous rulings and giving an incorrect jury instruction.   The state habeas corpus court, which also presided over Batiste's guilty plea and trial, concluded that the application was without merit after considering an affidavit from Batiste's defense counsel.   Following the state habeas corpus court's recommendation, the

---

[1](...continued)
> The punishment range for a first-degree felony offense ranges from a minimum of five years to not more than ninety-nine years or life in prison.   *See* TEX. PENAL CODE § 12.32.

Texas Court of Criminal Appeals denied relief without a written order. *See Ex parte Batiste*, No. 68,667-01 (Tex. Crim. App. Oct. 31, 2007).

Batiste now seeks a federal writ of habeas corpus under 28 U.S.C. § 2254.  In his pending petition, Batiste raises essentially the same or similar claims as those that were rejected on state habeas corpus review.  The respondent maintains that Batiste is not entitled to relief under the governing federal habeas corpus statutes.  Batiste disagrees.  The parties' contentions are addressed below.

## II.     STANDARD OF REVIEW

Federal review of the pending habeas corpus petition is subject to the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996).  Embodying the principles of federalism, comity, and finality of judgments, the AEDPA "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).

The federal habeas corpus statutes require applicants for relief to first present their claims in state court and to exhaust all state court remedies through proper adjudication. *See*

4

28 U.S.C. § 2254(b).  To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies.  For claims adjudicated on the merits, the AEDPA provides that a petitioner is not entitled to relief unless the state court's ultimate decision:

> (1)    was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2);  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (observing that the AEDPA standard is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning") (citation omitted). The burden is on the petitioner to show that he is entitled to relief under the highly deferential AEDPA framework. *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).

Claims presenting pure questions of law and mixed questions of law and fact are governed by § 2254(d)(1).  *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  The Supreme Court has clarified that "clearly established Federal law" or precedent for purposes of § 2254(d)(1) "refers to the holdings, as opposed to the dicta," of decisions from the United States Supreme Court "as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 653 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  A state court decision is "contrary to" clearly established precedent if the state court arrives at a conclusion opposite to one reached by the Supreme Court on a question of law

or if the state court decides a case differently from the Supreme Court "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13.   A state court decision is an "unreasonable application" of clearly established precedent if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Id.*

Pure questions of fact are governed by § 2254(d)(2). *See Martin*, 246 F.3d at 475. In addition, a state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)).   This deference extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

## III.   DISCUSSION

### A.   Batiste's Guilty Plea

The respondent correctly notes that a review of Batiste's claims is constrained by his guilty plea, which is presumptively valid.   As noted above, after the jury was selected and empaneled, Batiste elected to plead guilty to the charges of aggravated assault with a deadly weapon. *See Court Reporter's Record*, vol. 4, at 13.   Batiste does not challenge his decision to plead guilty.   The respondent maintains, therefore, that any claim concerning the

guilt/innocence phase of the proceeding is waived.

As a general rule, "[a] voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). A plea's validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal. *See Bradshaw v. Stumpf*, 545 U.S. 175, 186 (2005). Rather, the validity of a plea may be challenged only on the grounds that it was made on the constitutionally defective advice of counsel or that the defendant could not have understood the terms of the bargain he agreed to. *See id*. (citations omitted). Thus, by pleading guilty to an offense, a criminal defendant waives all non-jurisdictional defects preceding the plea. *United States v. Owens*, 996 F.2d 59, 60 (5th Cir. 1993). This includes those claims for ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary. *See United States v. Glinsey*, 200 F.3d 386, 392 (5th Cir. 2000).

After Batiste entered his guilty plea, the trial court admonished him at length about his constitutional rights and determined that Batiste's decision to plead guilty was voluntarily and knowingly made. *See Court Reporter's Record*, vol. 4, at 13-31. Batiste does not dispute that his guilty plea was voluntary and his claims do not otherwise call into question the validity of that decision. Accordingly, to the extent that his allegations concern an issue of guilt or innocence, his claims are waived and Batiste is not entitled to relief on those claims.

The respondent argues in the alternative that, to the extent that his claims are not

waived, Batiste is not entitled to relief because his claims are without merit.  The merits of Batiste's claims are discussed in further detail below.

### B.    Ineffective Assistance of Counsel

Batiste contends that he was denied effective assistance of counsel because his attorney failed to do the following:  (1) to challenge a potential juror for cause; (2) to object to evidence concerning an extraneous offense; (3) to prepare adequately for a hearing on his motion for a psychiatric examination; and (4) to advise him of the deadline for accepting the State's plea bargain offer of a twenty-year sentence.  Crediting an affidavit filed by Batiste's trial attorney in response to these allegations, the state habeas corpus court concluded that Batiste was not entitled to relief.  *See Ex parte Batiste*, No. 68,667-01 at 114-31.  Because ineffective assistance of counsel presents a mixed question of law and fact, Batiste must demonstrate that the state court's decision was contrary to or involved an unreasonable application of "clearly established Federal law" in order to prevail.  *See* 28 U.S.C. § 2254(d)(1); *Virgil v. Dretke*, 446 F.3d 598, 604 (5th Cir. 2006).

The Supreme Court has recognized that the Sixth Amendment guarantees criminal defendants the effective assistance of counsel at trial.  *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  To establish ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must satisfy the two-prong test established by *Strickland v. Washington*, 466 U.S. 668 (1984) by demonstrating both of the following: (1) that his counsel's performance was deficient; and (2) that the deficiency prejudiced his defense. Failure to prove either prong of the *Strickland* test will defeat an ineffective-assistance claim.

8

*See Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005) (citing *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998)).

To establish deficient performance, the petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689). Performance is prejudicial only if, but for counsel's errors, there is a reasonable probability that the final result would have been different and confidence in the reliability of the verdict has been undermined. *See Leal*, 428 F.3d at 548 (citing *Little v. Johnson*, 162 F.3d 855, 860-61 (5th Cir. 1998)).

To the extent that Batiste's allegations of ineffectiveness concern his counsel's performance in connection with his punishment, the prejudice inquiry is modified. Where ineffective assistance is alleged in the state court noncapital sentencing context, the prejudice component requires a habeas corpus petitioner to demonstrate a reasonable probability that, absent his counsel's unprofessional errors, the sentence would have been "*significantly* less harsh." *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993) (emphasis in original); *see also Ward v. Dretke*, 420 F.3d 479, 498 (5th Cir. 2005) (applying the rule in *Spriggs*). Batiste's allegations of ineffectiveness are discussed separately below under this standard.

9

### 1.    Failure to Challenge a Potential Juror

Batiste complains that his attorney was deficient because he failed to challenge a potential juror for cause. Batiste claims that this juror, identified as Keith Ridley, was biased against him. Batiste notes that, during the State's voir dire, Ridley agreed that the Texas scheme of enhanced penalties for repeat offenders was "fair" because he had a close family member who was a habitual offender:

> STATE:     . . . You feel that [enhanced sentences are] fair. Why do you think that's fair, Mr. Ridley?
>
> RIDLEY:    Because I have a brother. He's in and out of jail. And every time he comes out of prison, he goes right back in. I believe he should have stayed because he's not fit for society.

*Court Reporter's Record*, vol 3, at 59-60. The record confirms that Mr. Ridley served as a juror at Batiste's trial. *See id.* at 143. Batiste argues that his attorney should have challenged Ridley for cause based on the comments that Ridley made about his brother.

In his affidavit to the state habeas corpus court, defense counsel explained that Batiste elected to have a jury decide his punishment. *See Ex parte Batiste*, No. 68,667-01 at 117. This was against counsel's advice, given the volume of the State's evidence against Batiste, including but not limited to the victim's witness statements and anticipated trial testimony about how Batiste shot her in the stomach and the face, as well as the fact that Batiste was a repeat offender. *See id.* Defense counsel explained further that, after discussing all of the potential jurors with Batiste, they decided not to challenge Mr. Ridley for cause because his statements during voir dire did not reflect an inability to render an impartial verdict. *See id.*

at 119.  Defense counsel observed that, although Mr. Ridley commented that his brother was a habitual offender who was "in and out of jail," Ridley also stated that he could "consider the full range of punishment" in this case.  *See id.* (citing *Court Reporter's Record*, vol. 3, at 54).  Defense counsel "[did] not believe that Mr. Ridley's feelings for his brother constitute[d] an established conclusion as to the guilt or innocence of [Batiste]."  *Id.*  In that respect, "[a]t no time did Mr. Ridley state that in his opinion, his conclusions [about his brother] would influence his verdict."  *Id.*  Defense counsel noted that the sole question at issue was whether Mr. Ridley could "put aside prior knowledge and opinion and render an impartial verdict."  *Id.* (citation omitted).  Because Mr. Ridley did not state that his beliefs about his brother would influence or affect his decision during deliberation of Batiste's case, defense counsel believed that Ridley was not subject to a challenge for cause.  *Id.* at 119-20 (citation omitted).

Jury selection by counsel clearly involves trial strategy that is ill suited to judicial second-guessing.  *See, e.g., Romero v. Lynaugh*, 884 F.2d 871, 878-79 (5th Cir. 1989) ("The selection of a jury is inevitably a call upon experience and intuition. The trial lawyer must draw upon his own insights and empathetic abilities. . . . [O]ur willingness to second guess [counsel's choices] must be informed by the reality of their task and the limits of the recording of their work before us.").  Strategic decisions made by counsel during the course of trial are entitled to substantial deference in the hindsight of federal habeas review.  *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting

11

effects of hindsight").  A federal habeas corpus court may not find ineffective assistance of counsel merely because it disagrees with counsel's chosen trial strategy.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999).  It is well established in the Fifth Circuit that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997).  *See also Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (citing *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1975); *Daniels v. Maggio*, 669 F.2d 1075 (5th Cir. 1982)).

The record supports defense counsel's account of the voir dire and does not disclose evidence of unsound trial strategy.  During questioning by the State, Ridley agreed that he could consider the full range of punishment applicable to the charged offense.  *See Court Reporter's Record*, vol. 3, at 54.  During voir dire by defense counsel, Ridley also agreed that he could find Batiste "not guilty" if the State failed to prove its case beyond a reasonable doubt.  *Id*. at 104.  The record does not demonstrate that Ridley's comments about his brother demonstrated clear bias against the defendant or constituted grounds to challenge Ridley for cause under Texas law.[2]  Absent a showing that defense counsel had grounds to challenge

---

[2]    In Texas, a challenge for cause is "an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." TEX. CODE CRIM. PROC. ANN. art. 35.16(a) (Vernon 2006). A challenge for cause may be made by either the State or the defense when, among other things, the prospective juror is "biased or prejudiced in favor of or against the defendant." *Id*. art. 35.16(a)(9). "Bias" means an inclination toward one side of an issue rather than to the other leading to the natural inference that the juror will not act with impartiality. *Anderson v. State*, 633 S.W.2d 851, 853 (Tex. Crim. App. [Panel Op.] 1982). "Prejudice" means prejudging. *Id.*

Ridley for cause, but did not raise them, Batiste fails to allege facts showing that his counsel was deficient or that he was prejudiced as a result.  Accordingly, Batiste fails to show that he was denied effective assistance of counsel during voir dire.

### 2.    Evidence of an Extraneous Offense

Batiste complains that his attorney was deficient because he failed to object to evidence about an unadjudicated extraneous offense.  As summarized above, Batiste was accused of shooting Jana Reed on September 14, 2003, and charged with aggravated assault with a deadly weapon as a result.  Alice Roy Bellard testified that she saw Batiste shoot at her friend Victoria (also known as "Little Bit") approximately one month later on October 13, 2003, as the two women sat at a bus stop in Houston.  Batiste appears to complain that, during her testimony about this extraneous offense, the State elicited hearsay testimony from Alice Ray Bellard.  Batiste also appears to claim that the extraneous offense was irrelevant and that his attorney failed to raise an objection.

The record refutes Batiste's claim that his counsel failed to object.  Before admitting evidence of the extraneous offense, the trial court considered Bellard's testimony during a hearing outside the jury's presence.  *See Court Reporter's Record*, vol. 4, at 81-95.  The record reflects that Batiste's counsel objected to Bellard's testimony on several grounds, including objections that her testimony contained a hearsay statement, that the State failed to prove the unadjudicated offense beyond a reasonable doubt, that the offense was not relevant, and that the prejudicial effect of the testimony outweighed its probative value.  *See id*. at 84-85, 95-103.  The trial court overruled all of these objections and allowed Bellard to

13

testify about the shooting in front of the jury.  *See id*. at 104.

Batiste fails to show that his counsel had, but failed to make, a valid objection to Bellard's testimony.  Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, Batiste fails to demonstrate deficient performance or actual prejudice.  *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted);  *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.").  Accordingly, Batiste fails to demonstrate that he was denied effective assistance of counsel in connection with evidence of the unadjudicated offense.

### 3.      Failure to Prepare for a Hearing

Batiste complains that his attorney was deficient because he failed to prepare adequately for a hearing on his motion for a psychiatric examination.  In that respect, Batiste claims that his attorney should have presented evidence showing that he was not competent to stand trial.

The test for measuring competency to stand trial is whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him.  *See*

*Indiana v Edwards*, — U.S. —, 128 S. Ct. 2379, 2383 (2008) (citing and quoting from *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam) and *Drope v. Missouri*, 420 U.S. 162, 171 (1975)); *DeVille v. Whitley*, 21 F.3d 654, 656 (5th Cir. 1994). *See also* TEX. CODE CRIM. PROC. ANN. Chapter 46B (West 2006) (governing competency to stand trial), formerly codified at TEX. CODE CRIM. PROC. ANN. art. 46.02. The record reflects that defense counsel filed a written motion for a psychiatric examination to assess Batiste's "competency to stand trial" on August 9, 2004, the day before trial was scheduled to start. *Clerk's Record*, at 73-74. That morning, before jury selection commenced, the trial court held a hearing on the motion. *See Court Reporter's Record*, vol. 3, at 4. At this hearing, defense counsel explained that Batiste had requested a psychiatric examination for the first time that morning. *See id.* Counsel contacted the jail infirmary and asked the deputy in charge to check Batiste's records regarding what medication, if any, he was taking. *See id.* at 5. Counsel also presented testimony from Batiste on the issue of his competency.

During his testimony at the hearing, Batiste confirmed that he first informed his counsel of his request for a psychiatric examination on the morning of August 9, 2004. *See id.* at 7. Batiste testified that he was taking medication (Elavil), which had been prescribed by a "registered practitioner" at the jail to treat "[a]nxiety attacks." *Id.* at 8. Batiste added that he had a "phobia with spiders or things of that nature because [he] [had] been bitten by one" previously. *Id.* Batiste stated further that his prior drug use had probably "left a mark on [him] as far as [his] nerves." *Id.* Batiste acknowledged that he had not requested any type of psychiatric or psychological counseling at the jail, and stated that he was only being

15

treated for anxiety.  *Id.*  When asked, Batiste did not say that his condition or his medication had caused an inability to assist his attorney with his defense.  *See id.* at 9.  Instead, Batiste clarified that the medication was "the only thing that allow[ed] him to rest."  *Id.*

The State argued that there was no evidence to support a finding that Batiste was incompetent to stand trial.  *See id.* at 6.  During cross-examination, which was limited to the issue of competency, Batiste acknowledged that he understood the charges against him, that he consulted with his attorney about those charges in preparation for trial, and that he discussed the case with him.  *See id.* at 9-11.  Batiste also recognized the prosecutor, the judge, as well as his defense counsel, and conceded that he understood what was happening. *See id.* at 11. After hearing all of the testimony, the trial court denied the motion for a psychiatric examination.  *See id.* at 11-12.

The respondent maintains that Batiste cannot prevail on his claim of ineffective-assistance under the theory of "invited error," because he did not inform his counsel about his concerns until the day before trial.  Batiste does not allege facts showing that his counsel knew or should have known that he was having mental problems before the day of trial.   At the pretrial hearing on August 9, 2004, shortly before the start of trial, Batiste agreed that he and his counsel had worked "diligently over the past few months" to prepare for trial, going through the State's evidence, witness lists, offense reports, scientific evidence, ballistics reports, and photographs. *Court Reporter's Record*, vol. 2, at 15.  Likewise, during the guilty plea proceeding, defense counsel stated that he and Batiste "worked extensively together" to prepare for trial, that he and Batiste "worked very well together," and that Batiste had

given no indication that he did not understand what was going on. *Court Reporter's Record,* vol. 4, at 24.

The record of the pretrial hearing and the guilty plea proceeding, which include Batiste's testimony in response to questioning by his counsel, the prosecutor, and the trial court, confirms that Batiste understood the nature of the charges and the proceedings against him. *See Court Reporter's Record*, vol. 2, at 15-18; vol. 4, at 21-25. A criminal defendant's "[s]olemn declarations in open court carry a strong presumption of verity," which constitute a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *Montoya v. Johnson*, 226 F.3d 399, 406 (5th Cir. 2000). Batiste has failed to overcome that presumption here. Because the record shows that Batiste was able to consult with his lawyer and prepare his defense, there is no evidence that Batiste's counsel was deficient for failing to investigate Batiste's competency prior to trial.

Likewise, to the extent that Batiste claims that his attorney failed to investigate or prepare for a competency hearing, he does not state with specificity or otherwise demonstrate what the investigation would have revealed and how it would have changed the outcome of his trial. *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). In that respect, the evidence and the allegations presented by Batiste in his petition and his supplemental pleadings do not demonstrate that he was incompetent to stand trial or that any additional investigation by counsel would have

17

made a difference.[3]  Under these circumstances, Batiste fails to show that his counsel was deficient or that he was actually prejudiced as a result.  Thus, Batiste fails to show that he was denied effective assistance of counsel in connection with his competency to stand trial.

### 4.    Failure to Advise About a Plea Bargain Deadline

Batiste complains that his attorney was deficient because he failed to advise him of the deadline for accepting the State's plea bargain offer of a twenty-year sentence.  This claim is without merit.  At the pretrial hearing on August 9, 2004, Batiste confirmed that his counsel had explained the potential range of punishment and relayed the State's offer.  *Court Reporter's Record*, vol. 2, at 16.  Batiste also confirmed that his defense counsel had informed him that the State intended to seek an enhanced sentence because of his prior felony.  *See id*.  Although counsel recommended that Batiste take the offer, Batiste acknowledged that he rejected the offer and insisted on a trial.  *See id*.  Batiste does not allege or show that he intended to accept the State's offer.  It follows that, even if the offer

---

[3]    Batiste presents no evidence here, and he presented none in state court, showing that he was unable to understand the proceedings or consult with his counsel.  *See Edwards*, 128 S. Ct. at 2383.  For example, Batiste has presented a medical record from the Galveston County Jail which confirms that he was taking Elavil for anxiety and Zantac for an upset stomach. (Doc. # 16, Exhibit).  Other exhibits reflect that Batiste has received treatment in prison for a possible "substance-induced psychotic disorder" and "hallucinations." (Doc. # 18, Exhibit 2).  In January of 2008, a mental health care worker noted that Batiste appeared neatly dressed, clean, calm, that he listened, made eye-contact, was able to make normal conversation, and that he expressed himself appropriately. (*Id.*).  Other records presented by Batiste from an individual therapy session reflect that he admitted using "lots of cocaine" and shooting the victim because she was a prostitute and because "he thought she was plotting to rob him." (Doc. # 6, Exhibit).  The therapist noted "[n]o signs or symptoms of psychopathology," but recommended that he "[c]ontinue with individual therapy" to address his issues. (*Id.*).  These records do not demonstrate that Batiste was incompetent to stand trail.

had expired, Batiste fails to show that he was prejudiced as a result.

In summary, Batiste does not show that his counsel was deficient or that he suffered actual prejudice as a result of any alleged deficiency. Accordingly, Batiste does not demonstrate that the state court's decision to reject his ineffective-assistance claims was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. He is not entitled to federal habeas corpus relief on any of his ineffective-assistance claims.[4]

### C.    Prosecutorial Misconduct

Batiste argues further that he is entitled to federal habeas corpus relief because the prosecutor engaged in misconduct by introducing evidence from Alice Ray Bellard regarding the extraneous offense. To prevail on a claim of prosecutorial misconduct, a habeas corpus petitioner must show that the prosecutor's actions "'so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process.'" *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (quoting *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996)). "Prosecutorial misconduct is not a ground for relief unless it casts serious doubt upon the correctness of the jury's verdict." *Styron v. Johnson*, 262 F.3d 438, 449 (5th Cir. 2001). In other words, the alleged conduct must render the trial fundamentally unfair within the

---

[4]      Batiste alleges that he was deprived of a fair trial as a result of the cumulative effect of the above-referenced errors. Federal habeas relief is only available for cumulative errors that are of a constitutional dimension. *See Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997); *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993). As discussed above, none of Batiste's claims establish that he received ineffective assistance of counsel under *Strickland*. Because he has not identified errors of constitutional dimension, he is not entitled to federal habeas corpus relief on this issue.

meaning of the Due Process Clause of the Fourteenth Amendment.  *See Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986).  Batiste fails to make that showing here.

On direct appeal, the state court determined that the extraneous offense was admissible.  *See Batiste v. State*, No. 14-04-00867-CR (Tex. App. — Houston [14th Dist.] Nov. 15, 2005, pet. ref'd) ("This evidence was offered during the punishment phase of the trial, where extraneous offense evidence is admissible to the extent the trial court deems it relevant to sentencing and the offense is shown beyond a reasonable doubt to have been committed by the defendant.") (citing TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (Vernon Supp. 2005); *Huizar v. State*, 12 S.W.3d 479, 480-81 (Tex. Crim. App. 2000)).

As discussed previously in connection with his ineffective-assistance claim, Batiste fails to show that Bellard's testimony about the extraneous offense was inadmissible. Likewise, Batiste fails to show that he was denied a fair trial as a result of this evidence or any alleged misconduct on the prosecutor's part.  Because Batiste fails to establish that the state court's decision to reject this claim was incorrect or unreasonable, his claim of prosecutorial misconduct does not warrant federal habeas relief.

### D.    Trial Court Rulings

Batiste maintains further that he is entitled to federal habeas corpus relief because the trial court erred by allowing an "unqualified" juror (Mr. Ridley) to serve and by depriving him of an "expert psychiatric examination."  To prevail with a claim concerning these issues, a habeas corpus petitioner must show that the trial court erred in such a manner as to render the trial as a whole fundamentally unfair.  *See Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th

Cir. 1984).  On habeas corpus review of a state conviction, the federal harmless error standard applies, which means that, to warrant relief, the trial court's error must have "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).  This requires the petitioner to demonstrate actual prejudice.  *See id.* at 637; *see also Fry v. Pliler*, — U.S.—, 127 S. Ct. 2321, 2338 (2007) (confirming that in federal habeas corpus proceedings under 28 U.S.C. §2254, a reviewing court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*").

Each of Batiste's claims concerning the trial court fails for reasons discussed previously in connection with Batiste's related claims concerning his counsel's effectiveness. With regard to Batiste's claim that the trial court erred by allowing Mr. Ridley to serve as a juror, Batiste concedes that his counsel did not object to Mr. Ridley or attempt to challenge him for any reason.  More importantly, as outlined above, the record does not demonstrate that Mr. Ridley was disqualified from serving as a juror or that he was subject to a challenge for cause.  Therefore, Batiste fails to show that the trial court erred by allowing Mr. Ridley to serve as a juror.

Likewise, Batiste's claim that the trial court erred by denying his motion for a psychiatric evaluation was rejected on direct appeal.  *See Batiste v. State*, No. 14-04-00867-CR, slip op. at 2-3 (Tex. App. — Houston [14th Dist.] Nov. 15, 2005, pet. ref'd).  As discussed previously, the record shows that Batiste was taking medication for anxiety and to help him rest, but that he was able to consult with his counsel and prepare for trial.  There

is no evidence that Batiste was unable to understand the proceedings or that he could not participate in his own defense.  Because Batiste has failed to show that he was incompetent to stand trial, he does not demonstrate that the trial court erred by denying his motion for a psychiatric examination.[5]  Absent such a showing, Batiste fails to establish that the state court's decision to deny relief was incorrect or unreasonable and he is not entitled to federal habeas corpus relief on this issue.

### E.    Jury Instructions

Batiste contends that he is entitled to relief because the trial court gave an incorrect instruction to the jury.  In particular, Batiste complains that the trial court instructed the jury

---

[5]     In his traverse, Batiste contends for the first time that the trial court was required to order a pre-sentence investigation under Article 42.12, § 9(i) of the Texas Code of Criminal Procedure.  (Doc. # 14, at 6).  Under this statute, a trial judge may order a "community supervision" or parole officer to conduct an investigation of the defendant's criminal and social history "before the imposition of sentence" for use in determining his punishment:

> A presentence investigation conducted on any defendant convicted of a felony offense who appears to the judge through its own observation or on suggestion of a party to have a mental impairment shall include a psychological evaluation which determines, at a minimum, the defendant's IQ and adaptive behavior score. The results of the evaluation shall be included in the report to the judge as required by Subsection (a) of this section.

It does not appear that Batiste presented this claim on state habeas corpus review and, therefore, it is unexhausted and procedurally barred.  Alternatively, the claim is without merit.  A judge is not required to request a presentence investigation where, as here, a defendant has elected to have his sentence determined by a jury.  *See* TEX. CODE CRIM. PROC. art. 42.12, § 9(g)(1); *White v. State*, 181 S.W.3d 514, 521 (Tex. App. — Texarkana 2005), *aff'd*, 225 S.W.3d 571 (Tex. Crim. App. 2007).  Likewise, a presentence investigation report is not required where the only available punishment is imprisonment.  *See id*. at Art. 42.12,§ 9(g)(3).  As a repeat offender, Batiste does not demonstrate that probation was an option in his case or that he was otherwise eligible for community supervision.  Accordingly, he fails to show that the trial court erred by failing to request a presentence investigation.

22

pursuant to Article 37.07, § 4(a) of the Texas Code of Criminal Procedure instead of applying the law applicable to his case according to Article 36.14.   Article 37.07 applies to the punishment phase of all non-capital felony offenses.  *See Huizar v. State*, 12 S.W.3d 479 (Tex. Crim. App. 2002) (holding that Article 37.07 is "the law applicable" to all non-capital punishment proceedings).  Article 37.07, § 4(a) authorizes a jury instruction on the effect of "parole law and good conduct credit" for offenders who have been found guilty of serious offenses that are enumerated in Article 42.12, § 3(g).  Article 36.14 governs the general process used to instruct or "charge" the jury in a Texas felony or misdemeanor proceeding.[6]

---

[6]      Article 36.14 provides the following general provision for instructing a jury:

> Subject to the provisions of Article 36.07 in each felony case and in each misdemeanor case tried in a court of record, the judge shall, before the argument begins, deliver to the jury, except in pleas of guilty, where a jury has been waived, a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury. Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, distinctly specifying each ground of objection. Said objections may embody errors claimed to have been committed in the charge, as well as errors claimed to have been committed by omissions therefrom or in failing to charge upon issues arising from the facts, and in no event shall it be necessary for the defendant or his counsel to present special requested charges to preserve or maintain any error assigned to the charge, as herein provided. The requirement that the objections to the court's charge be in writing will be complied with if the objections are dictated to the court reporter in the presence of the court and the state's counsel, before the reading of the court's charge to the jury. Compliance with the provisions of this Article is all that is necessary to preserve, for review, the exceptions and objections presented to the charge and any

(continued...)

The respondent argues that the error, if any, involves the application of state law and does not rise to the level of a constitutional issue of the sort that is cognizable on federal habeas corpus review.  To the extent that Batiste complains that his jury instructions violated Texas law, he fails to state a claim for federal habeas corpus relief.  As the Supreme Court has held repeatedly, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  The state courts have already considered and rejected Batiste's claim.  It is well established that it is not the function of a federal habeas corpus court "to review a state's interpretation of its own law." *Weeks v. Scott*, 55 F.3d 1059, 1063 (citing *Moreno v. Estelle*, 717 F.2d 171, 179 (5th Cir. 1983), *cert. denied*, 466 U.S. 975 (1984)); *see also Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002) ("We will take the word of the highest court on criminal matters of Texas as to the interpretation of its law, and we do not sit to review that state's interpretation of its own law.") (quoting *Seaton v. Procunier*, 750 F.2d 366, 368 (5th Cir. 1985)).

Batiste cites no Supreme Court authority or constitutional provision in support of his claim concerning the jury instructions in his case.  He makes no effort to otherwise show that the state court's decision to deny relief is contrary to, or involved an unreasonable

---

[6](...continued)

       amendment or modification thereof. In no event shall it be necessary for the defendant to except to the action of the court in over-ruling defendant's exceptions or objections to the charge.

    TEX. CODE CRIM. PROC. art. 36.14.

application of, clearly established Supreme Court precedent.  Accordingly, Batiste is not entitled to relief under 28 U.S.C. § 2254(d).  Because Batiste has failed to state a claim for which relief can be granted, his petition must be dismissed.

## IV.   **DISCOVERY MOTION**

Batiste has filed a motion for discovery regarding whether he was competent to stand trial. (Doc. # 16).  In particular, Batiste seeks discovery of the records from the Galveston County Jail showing what medication he was taking at the time of trial.

Discovery is limited in a federal habeas corpus proceeding.  "Rule 6 of the Rules Governing § 2254 cases permits discovery only if and only to the extent that the district court finds good cause." *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000); *see also Hill v. Johnson*, 210 F.3d 481, 487 (5th Cir. 2000).  "Good cause" may be found when a petition for a writ of habeas corpus "establishes a *prima facie* claim for relief." *Murphy*, 205 F.3d at 814. Before authorizing discovery, the Court must first conclude that the specific allegations in the petition "show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Id.*  In that regard, petitioner's factual allegations "must be specific, as opposed to merely speculative or conclusory, to justify discovery." *Id.*  "Simply put, Rule 6 does not authorize fishing expeditions." *Id.*; *see also Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

Batiste does not demonstrate that his request for discovery is supported by good cause. As noted above, Batiste testified at the pretrial hearing on his motion for a psychiatric evaluation that he was taking Elavil for anxiety.  In support of his request for discovery,

25

Batiste presents a medical record from the Galveston County Jail, which confirms that he was taking Elavil for anxiety and that he was also taking Zantac for an upset stomach. (Doc. # 16, Exhibit). In view of Batiste's testimony at the pretrial hearing, which showed that he was able to consult with his counsel and that he understood the proceedings against him, Batiste does not allege facts demonstrating that his competency was in doubt or that discovery is warranted on this issue. Accordingly, Batiste's motion for discovery is denied.

## V.   CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or,

for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has carefully considered all of the pleadings and the applicable law. Based on this review, and for the reasons set forth above, the Court concludes that jurists of reason would not debate whether any of the procedural rulings are correct, or whether any assessment of the above-referenced constitutional claims is debatable or wrong. Because the petitioner has failed to make "a substantial showing of the denial of a constitutional right," a certificate of appealability will not issue in this case.

## VI.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.     The petitioner's motion to supplement his traverse (Doc. # 17) is **GRANTED**, but his motion for discovery (Doc. # 16) is **DENIED**.

2.     The federal habeas corpus petition is **DENIED** and this proceeding is **DISMISSED** with prejudice.

27

3.      A certificate of appealability is **DENIED**.

The Clerk will provide copies of this order to the parties.

SIGNED on July 31st , 2008.

Nancy F. Atlas
United States District Judge